Parker, J.
In the court of common pleas Fenner brought an action against David F. Brubaker, Mary L. Brubaker, E. Balliet (first full name unknown), Eliza Russell and Eliza Russell, Administratrix of the estate of Sylvester Russell, deceased, to recover a judgment on account of certain indebtedness alleged to have arisen out of the operation of a stone quarry at Clarksfield, Huron county, in this state; an indebtedness to workmen in the quarry, represented by time-checks which had been issued and which came into the hands of the plaintiff, Fenner. It is averred in the petition that all these persons, excepting Eliza Russell as administratrix of the estate of Sylvester Russell, deceased, and including Sylvester Russell himself in his lifetime, were partners doing business under the firm name of The Furlong Stone Company,at Clarksfield,Huron county,Ohio. That Russell had died and Eliza Russell had been appointed administratrix,and that subsequently to the death of Sylvester .Russell the defendants, David F. Brubaker, Mary L, Brubaker, E. Balliet, (first full name unknown), Eliza Russell and Eliza Russell, administratrix of said Sylvester Russell, continued said partnership and operated the business pertaining thereto.
The case went to trial to a jury and resulted in a verdict in favor of the plaintiff for the greater part of his claim against David F. Brubaker, E. Balliet and Eliza Russell personally, and in favor of Mary L. Brubaker and Eliza Russell as administratrix of the estate of Sylvester Russell.
A motion for a new trial was made on . behalf of Eliza Russell, on various grounds, one ground being that the verdict, as to her, was against the weight of the evidence.
It will be observed that it is charged in the petition that these persons were all partners. It is said to us on Í ehalf of the defendant in error that, if they were not actually partners by virtue of their having entered into a partnership agreement, Mrs. Russell may be held as a partner by the plaintiff because of her having held herself out as such partner; because of her having .conducted herself in such a man *529 ner towards the public and towards those who gave the credit and performed the labor out of which these claims, arose, and towards the plaintiff,as that she is estopped from, now asserting that she was not a partner and bound as such to discharge these claims.
There is no averment of such a state of facts in the petition, and no such question was submitted to the jury by the trial judge. It is charged in the petition that they were actual partners, and when the trial judge came to charge the jury upon that subject he said:
“The plaintiff charges that Eliza Russell, together with David F, Brubaker and E. Balliet, after the death of Sylvester Russell, continued the stone business theretofore entered upon at Clarksfield,in Huron county,as a partnership; and that the claims or accounts set forth and which he holds as assignee, are valid claims against that partnership of which these three parties were members, as- he alleges. The defendant, Eliza Russell, in her answer, denies that she entered into any partnership contract or arrangement with this defendant, or any of the defendants, for the prosecution of this business as charged in the petition,and the burden is upon the plaintiff to establish this fact, and he must establish this fact to your satisfaction, by a preponderance of the evidence in the case, before there can be a recovery against the defendant, Eliza Russell. It is charged that the relation existing between Eliza Russell, David F. Brubaker and E. Balliet, from the 17th of April, 1892, or thereabouts, was that of partners; that they did business as a partnership. A partnership is a contract between two or more persons to place their money or effects or labor or skill, or some or all of these, in a lawful business, and to divide the profits and bear the losses, either equally or in certain proportions. A partnership cannot exist without an understanding or agreement between the minds of the members of that partnership; and the question for you to determine from the evidence in this case is, whether or not these three parties, as charged in this petition, made a contract to embark in or to continue this business after the death of Sylvester Russell. It is conceded that during Sylvester’s lifetime he had an arrangement with some of these defendants to prosecute the stone quarry business in Huron coun *530 ty; that he was associated with David F. Brubaker and E. Balliet as a partner. As a matter of law, the death of Sylvester Bussell terminated that partnership and ended the contractual relations as between the parties; and anything that was done with reference to continuing that business subsequent to the death of Sylvester Russell must have been done by virtue of an understanding or agreement between other persona. It could have been carried on by an agreement between the surviving partners. They were at liberty to take others with them into the enterprise; and the only question in this case is, whether, as a matter of fact, it is shown by .the testimony that they did take in with them and associate with them in continuing that business Eliza Russell, the defendant here. This is purely a question of fact. If Eliza Russell did not enter ipto an arrangement with them to continue this business, then she was not a partner in the Stone Company, so-called; and, under the pleadings in this case and the evidence, cannot be held to respond to the plaintiff in this action.”
Further along, counsel on behalf of the plaintiff belovr remarked to the court:
‘‘I would like to suggest that, of course, a partnership contract need not be in writing.”
Whereupon the court said:
“It is unnecessary that a partnership contract should be in writing. There must, however, have been an agreement between these parties in the nature of a partnership contract; and it must appear from the testimony in the case that such agreement was entered into between them, before there can be a recovery as against Eliza Russell.”
The trial court having entertained that view of the law and the issues, we are unable to understand why the court did not grant the motion for a new trial; because it appears perfectly clear to us from this record, that the verdict is against the weight of evidence upon the proposition that they actually entered into a contract of partnership.
The alleged partners, when they come to testify,all declare most positively that they never did enter into such a contract, and nobody disputes it, and the circumstances that are presented as to the way the business was carried on, while they may have tended to establish that there was some holding *531 •out of that relation — 'Some sort of representation that the relatiun existed — are certainly not sufficient to establish, as against the positive declarations of the parties, that that relation did actually exist by virtue of an agreement of partnership. But assuming that under the pleadings,the question was presented whether Eliza Russell had so held herself out as a partner as that she may be bound to the plaintiff, on that aspect or phase of the case, the trial court did not go far enough in its charge, in that it did not present this question to the jury. But this charge was not prejudicial to the plaintiffpn error, so that we’are required to pass upon the question whether the plaintiff below was entitled to recover under the evidence notwithstanding the limitations upon his right declared and implied in the charge of the ■court; and we have examined this evidence to determine thi3 question.
I need not go into the history of this matter very fully, as counsel understand it as well,if not better than the court. It may be said in a general way, that this stone quarry was located at Clarksfield, in Huron county,and that Mr. Russell lived in Lucas county. Upon his decease Mrs, Russell, his widow, still continued to reside in Lucas county. During' the period that this labor was performed out of which this •claim arises, Mrs. Russell went to Clarksfield three times; Mr, Russell having died upon the 17th of April, 1892, she visited Clarksfield to ffiok after his affairs, as administratrix, on May 12th, on July 2nd, and again on August 13th, 1892, These visits were brief, one of them extending over a day or two, perhaps — and while there she was in consultation with Mr. Balliet, who appears to have been the active man in the transaction of this business after the decease of Russell. It appears that before the death of Russell he had entered into a contract with the partnership that he would ,do a certain job of work in the quarry, which is called ■“stripping”, which we understand consisted in removing the dirt and debris from the surface and exposing the stone beneath so that workmen might proceed with the quarrying of the stone. At the time of his decease but little work had been done upon that job. After his decease, his widow, as administratrix — and perhaps her attorney, Mr. Eckert — ■ conceived that it was her duty, or at least that it was proper *532 and advisable for her, to fulfill on her part as administratrix: the obligations which had been incurred by Mr, Russell in his lifetime in entering into this contract — and the fact that this view of the matter was taken by Mrs. Russell and her counsel, serves as an index to very much of the evidence.
The evidence,it seems to us, tends to show that all which-Mrs. Russell did in the premises was in the way of assuming and carrying out this contract, which had been entered into by Mr. Russell, and that she had no purpose of entering into a partnership or entering into an arrangement with Mr. Baliiet and Mr. Brubaker to carry on the business of quarrying stone after this contract should hawe been completed, but quite the contrary. According to her own testimony, and according to that of Baliiet, she declared most positively that she would not proceed to carry on the business, and that she had no authority to do so. Mr. Baliiet was called as a witness on behalf of the plaintiff, and he testifies positively — and there was no contradiction to it — that all the obligations, whether of Mrs. Russell or of Mrs. Russell' as administratrix, or of the company, growing out of this-stripping contract had been discharged; that all the claims-for labor had been paid; he says that positively in the course of his testimony, and of all these witnesses who were called here to sustain this claim of the plaintiff — a large number of them being men who actually performed the work and whose claims the plaintiff has obtained and is-bringing suit upon — none of them testify that their claims in this case arose out of the work that he performed in the stripping of this quarry. It appears that this contract was-taken by Mr. Russell for $350 or $360; that is to say, he-was to receive that compensation for the stripping. Mr. Baliiet testifies that as a matter of fact the stripping cost, over $1500, and that it was paid for by the Stone Company. He says that in one place in his testimony; and yet it appears that he had testified on another occasion — a matter which he seems to have forgotten — -that it cost $915.79. As to this having been paid by the company, Mrs. Russell testifies that Mr. Russell had paid $140 on the contract in his lifetime, that is, toward discharging the labor claims arising out of it, and after his decease she went with Balliet and Brubaker to the bank and borrowed $400, $300 of *533 which she afterwards paid — this ' $400 being to pay labor claims arising out of the performance of this contract; and that in addition to that there was another amount of $400 which she brought down and paid in addition to the $300 which she declares she paid on this note.
If that is true, she had herself discharged practically all the claims arising out of the labor of' stripping. But it may be that the company had paid something that should have been paid by Mrs, Bussell or by the Bussell, estate, That might give rise to an equity in favor of these laborers as the creditors of the firm, or in favor of the plaintiff here who stands in the shoes of these laborers as a creditor of the firm, to enforce the claims of the firm against Mrs, Bussell, or the Bussell estate,growing out of such payment by the firm; but we have no such case here! that kind of a case is not presented: this is simply an action at law to recover against Mrs. Bussell as a partner, or, to give it the most liberal construction, as one who has held herself out as a partner and therefore is bou.tid as such.
Now, the saying by Mrs. Russell that she would pay these labor claims, (assuming for the purpose of argument that she may have been referring to other claims than those arising out of the claims for the stripping work), or that she would see that they were paid, would amount to a guaranty of payment, a declaration of a purpose to pay, or an assurance that she would pay them, and would not, standing alone, amount to her holding herself out as a member of a partnership, or as being so jointly interested in the prosecution of that work as to justify her being held directly as one of the principals. Though there may have been a guaranty,it cannot be enforced because it is not sued upon, and because it is notin writing. The holding out must have been of a character to fairly give reason to believe that she was a partner; it must have been a holding out that she personally was a partner, or that she was jointly interested personally. The reliance of thejnen on the magnitude of the estate of Mr. Russell,or the reliance of the men on any promise that she may have made, or any expectation they may have had that she would go ahead as administratrix and settle these things up, would not justify the holding of Mrs. Russell personally as a partner.
*534 There is no sufficient evidence to show that she deceived them as to her authority as administratrix, and they are as much bound to know the law upon that subject as she, A mere mistake upon her part ai to her authority would not give rise to a cause of action in their favor as against her, even if she made a promise as administratrix which she did not fulfill; and even if there is such a thing in law as innocently misleading a person as to her legal authority as administratrix in such a way as would require her to respond personally But it is enough to say that we have not that question in the case here, though it may be that there was evidence tending to show that state of facts, She is sued as. one who was intentionally holding herself out asa partner,and one who actually was a partner in this enterprise. Now what was said by Mr, Eckert, as testified to by Mr. Malloy and as reported by him to Mr. Moon, even if it were authorized, does not amount, in our judgment, to the holding out by him as her agent, that Mrs, Russell was a partner. According to that Eckert declared that she was intending to come down and settle that estate; that she would see all these claims paid; that she would pay them. Mr. Malloy said that he so understood it, and that there was one other person by who heard it — Mr, Sharp (it is not pretended that anybody else heard it), and thereupon Malloy made the declaration which appears to have been heard by Mr. Moon,to the effect that Mr, Eckert told him — Malloy—that he should give the men working upon the bank all the encouragement that he could, and the assurance that all the work would be paid for, and they should go ahead and continue to do it. But there is this objection to giving effect to that (even if it went so far as to amount to a declaration that would hold Mrs Russell if she were present): Mr. Eckert does not appear to have been authorized to make any such declaration on her behalf, and she surely would not be bound by it unless it came to her knowledge that he had made such a declaration and assumed to speak for her, and that the men, in reliance upon it, were proceeding with their work; but the only testimony upon that point is that of Mr. Bal.liet to the effect that he communicated to Mrs, Russell on one occasion that Mr. Eckert had said to the men when working at the *535 stripping that it should go forward to completion As before stated, there does not appear to be any obligation here sued upon arising out of the work of stripping. Those labor claims appear to have been discharged,
We note respecting the testimony of the other witnesses who were at work there as to what was said to them by Mrs. Russell, that in nearly or quite every instance they testified to what w.as said to them by Mrs. Russell after the work was completed, or about the time when it was completed. There may have been an instance or two in which certain witnesses testified that they proceeded with their work thereafter in reliance upon what she said, Any declaration that she may have made after the work had been-done could not bind her upon the theory that she had held herself out as a partner and was therefore estopped from denying that that relation existed, for, in order to give rise to an estoppel there must have been reliance and performance upon the faith of such declaration, by the persons whose claims are asserted. Therefore, Mrs. Russell’s promise to Fenner, assuming that his testimony is correct, and what she promised to Scott (accepting his statement) with respect to the discharge of these obligations by reason of which they were afterwards encouraged to buy up the claims, cannot be asserted by them here and given the force of declarations on her part which would amount to a holding of herself out as a partner upon which they relied and proceeded, because they did not proceed to give credit to the partnership, but they did proceed to buy up some existing claims against the partnerhip, which we think amounts to an entirely different thing; we think that if this claim is enforcible upon what Mrs. Russell declared to them, it would be enforced only upon the theory that she guaranteed its payment, and that they must bring themselves within the provisions of the law upon the subject by their pleadings and by their proof. I may remark that as to most of these claims, the persons in whose favor they existed in the first instance do not appear here to testify that they gave credit upon anything that came to their knowledge or any information that they had received which led them to believe that Mrs. Russell was a partner.
We also entertain very serious doubts as to whether Mr. *536 Fenner has title to a great bulk of these claims upon which •he can maintain this action; i. e., whether he is the real party in interest, It seems from his testimony and that of other witnesses called on his behalf that he has taken the claims to collect them very much as an attorney might, A few of them, about $50 in amount, were bought before the death •of Mr. Russell. Mrs. Russell personally would not be bound upon those. The remainder of the claims came into his hands subsequently to the death of Mr. Russell. He ¡admits that since the death of Mr, Russell there has been •little or nothing paid by him upon any of these claims, and •his testimony tends to show that he took them practically as a collector or an attorney might. There may be a part -of the claims that, according to his testimony, he would have a right to recover upon, notwithstanding the way he 'holds them, so far as that question is involved. But we •hold upon the question whether Mrs. Russel has so held herself out as a partner as that she is bound to discharge ■any of these claims, that the verdict is manifestly against the weight of the evidence.
A, W. Eckert', Wickham & Wickham, for Plaintiff in •Error.
Marshall & Eraser, for Defendant in Error.
The judgment of the court of common pleas will be set ¡aside and a new trial granted.